UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

QUEST SHIPPING LIMITED,

                                         Plaintiff,

v.                                                                                  **COMPLAINT AND**
                                                                                     **JURY DEMAND**

THE AMERICAN CLUB, AMERICAN
STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY
ASSOCIATION INC, and
SHIPOWNERS CLAIMS BUREAU INC.,

                                         Defendants.

-----------------------------------------------------------x

       Plaintiff, QUEST SHIPPING LIMITED (hereinafter "Quest" by its attorneys STEWART LEE KARLIN LAW GROUP, PC as and for its Complaint against defendants THE AMERICAN CLUB, AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITYASSOCIATION INC. and SHIPOWNERS CLAIMS BUREAU INC., alleges upon information and belief as follows:

## NATURE OF ACTION

1. This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and involves an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy between the parties, as more fully appears herein and seeks a judicial declaration pursuant to Rule 57 of the Federal Rules of Civil

      Procedure that Quest is entitled to coverage under the Houston Specialty Insurance Policy in issue and for breach of contract.

## THE PARTIES

3. Upon information and belief, Quest, is a corporation duly organized under the laws of and incorporated in Nigeria with its principal place of business is No. 2B Oyinkan Abayomi Drive, Ikoyi, Lagos, Nigeria.

4. The American Club, The American Steamship Owners Mutual Protection and Indemnity Association, Inc. and the Shipowners Claims Bureau Inc. (the Club) are non-profit providers of protection and indemnity insurance, which insurance covers vessel owners and charterers against third-party liabilities arising from the ownership and operation of insured vessels. Members of the Club pay insurance premiums and assessments, which the Club uses to reimburse members for covered losses. The Club issues to each of its members a Certificate of Entry, which reflects that the member has entered into a marine insurance contract with the Club subject to the Club's By–Laws and Rules (Rules). The Club is an insurance company duly qualified pursuant to the laws of the State of New York and doing business in this jurisdiction through its authorized representative New York, New York.

## JURISDICTION

5. The Club's Rules include a choice-of-law and venue provision selecting New York law and the United States District Court Southern District of New York as the proper venue. The Club Rules states that any contract of insurance between the [Club] and a Member shall be governed by and construed in accordance with the law of the State of New York.

6. The Club rules state that if any difference or dispute shall arise between a Member and the

      [Club] concerning the construction of these Rules, or the insurance afforded by the [Club] under these Rules, or any amount due from the [Club] to the Member, such difference or dispute shall in the first instance be referred to and adjudicated by the Board of Directors. No Member shall be entitled to maintain any action, suit or other legal proceedings against the [Club] upon any such difference or dispute unless and until the same has been submitted to the Directors and they shall have given their decision thereto.

7. Quest per the rules first submitted its appeal to Shipowners Claims Bureau Inc. that denied coverage.  Quest then timely appealed to the Board of Directors and the Board of Directors on September 20, 2018 found that there was no coverage due to allegedly failure to pay a premium. Dissatisfied with the Board of Directors' decision, Quest has timely commenced this suit within 60 days of the decision of the Board of Directors.

8.  There is Admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and also diversity jurisdiction pursuant to 28 U.S. Code § 1332.

## THE POLICY

9. Since approximately 2014, Quest has had a Certificate of Entry for the Alexander J and Danny Rose.  The most recent policy was issued on February 20, 2017 to February 20, 2018.

10. The Insurance Policy was in effect at the time all the events occurred and included coverage of these vessels; Alexander J and Danny Rose.

11. Under the Policy, Defendant agreed to cover these vessels in the event of a collision of four fourths of liabilities arising from said collision.

## THE CLAIM

12. This action is predicated upon the improper cancellation of policies on the vessels MT Alexander J and MT Danny Rose.

13. In the action, Quest is seeking a declaration that the policy was not validly terminated pursuant to New York law and that even it was properly terminated, the claims occurred while insurance was still in place.

14. Quest Shipping has two (2) vessels — MT Alexander J and MT Danny Rose covered by the Club under the Protection and Indemnity insurance contract.

15. In 2015, MT Danny Rose had a collision with MT Ore Ofe. Owners of MT Danny Rose arrested Ore Ofe and owners of MT Ore Ofe counter arrested MT Danny Rose.

16. Both parties received advice from the Club to withdraw the suit from the court and both parties complied. The issue of settlement under that collision claim lingered from April 2015 until 28th December 2017 when the policy was purportedly cancelled.

17. As a matter of fact, on or about February 20, 2016, the Club increased its premium under Danny Rose as a result of that collision.

18. In January 2016, the sister vessel, MT Alexander J had a collision with a barge, ROVER and the owners of ROVER arrested ALEXANDER J.

19. In a bid to secure the release of ALEXNDER J and to limit losses, as provided under section 17 of Rule 2 page 61 of 2017 — 2018 Rule, Quest procured the services of D. A. Awosika & Partners (Legal Practitioners) before the Club intervened and asked Banwo and lghodalo to take over the suit, which was later transferred to Bloomfield Law Practice.

20. The owners of ROVER claimed $4,000,000 deposit or a Bank Guarantee in that sum as security before ALEXANDER J could be released. The Club was unable to meet the requirement for $4 million deposit. Quest in further demonstration of good faith secured $4million (USD) bank guarantee to free the vessel.

21. Quest kept in touch with the Club and gave constant updates through its brokers. As a result

of the ROVER collision, premiums on the Alexander were increased due to the collision/claim.

22. The case against ROVER was excellent. The ROVER had no trading documents, was not registered under any flag, and had no insurance. It was also evident that at the time of the collision, Rover's engines had failed, she had no lights and no signs of her presence as she drifted in the water.

23. Around November 22, 2017, Quest received mail from its brokers, SB Resources Limited (London) that the Club required Quest to give consent that the matter be settled for between $600,000 to $800,000 (USD).

24. Quest protested the settlement on grounds that it had good case against Rover and its owners and had suffered significant losses during the arrest and that had not been factored into the settlement.

25. Quest was compelled to provide consent and awaited the settlement.

26. In addition, the Club asked Quest to settle all outstanding payments before the claims could be settled. It was agreed and Quest settled all outstanding payments.

27. Surprisingly, on December 22, 2017 rather than receive updates on the settlement, the Club gave a 5-day Notice of Cancellation to Quest Shipping Limited on ground of late payment of premium which was due on the 20th day of December 2017.

28. All the days between 22nd and 28th December 2017 were holidays except for 27th December. (The 23rd and 24th was the weekend, 25th was Christmas and 26th was Boxing day also a holiday in the UK and Nigeria.)

29. Despite the seven-hour time difference between New York and Lagos, Nigeria, the premium was paid from Nigeria on the same day that the Notice of Cancellation was received. The

telex copy showed it was received by Quest's brokers in London on 28th December, by which time the Defendants had cancelled coverage. As a matter of fact, any bank transaction involving a transfer of funds (especially an overseas transfer) is treated as a next working day transaction once it is past 12noon. By the time Quest received the notice on December 22, 2107, it was already a non-banking day since no bank transfer could take effect by that time of the day. However, Quest's Naira account was debited on the same day. The mail box rule is in effect and the payment was timely made the moment the transaction was posted on December 22, 2017.

30. The Club Board of Directors are biased because of a direct conflict of interest. The Board Members are also members with interest. They are Ship Owners who are equally interested in the pool of funds. Members (Ship owners) can be called upon to make additional payment where there is an excessive claim, because claims are settled from the pool. Consequently, they will always make decisions that avoid claims so they will not be called upon to pay additional premiums. The American Club P & I premium is not fixed premium.

31. The Club failed to provide a 15 days' grace period to the insured. The insured must be provided a 15-day grace period from the date that notice of cancellation has been sent in order to make timely payment, pursuant to N.Y. Ins. Law § 3426(a)(3). Since a fifteen day notice was not provided, the notice of cancellation is invalid as it violates New York law.

32. N.Y. Ins. Law § 3426(H)(5) provides that written notice of cancellation in accordance with this subsection shall be mailed or delivered to the first-named insured, at the address shown on the policy, and to the insured's authorized agent or broker.

33. Upon information and belief, the December 22, 2017 Notice of Cancellation and December 28, 2017 Cancellation was not sent by mail to Quest's Brokers in London, S.B. Resources

Ltd. as required by New York law.

34. The shortened five-day notice was sent to Nigeria in bad faith on the eve of a four day Christmas holiday weekend in order to avoid coverage. The managers acted in bad faith from the impossibly short notice given. It is the requirement of the Rule that the Managers shall give Notice of Cancellation to the insured and that such notice must be reasonable. However, the Notice given by the Club Managers is not only unreasonable and impossible to meet, it was given in bad faith to deliberately avoid paying valid claims.

35. There was a significant and unreasonable delay in settlement of the claims. The Collision involving Danny Rose and MT Ore Ofe took place April, 2015, and was immediately reported to the club who ordered each party to vacate the Court Order of Arrest placed by each on the other vessel as well as withdraw the matter from court. If the Managers had been committed to settling the claims as they were in increasing the premium, this matter would have long been settled before the termination which occurred, over 2 and half years afterwards.

36. Likewise, the settlement on the Rover claim also did not take place for 2 years before the cancellation of policy. Had the Club been more committed or sincere with settlement processes, these claims would have all been settled long before the undue termination.

37. In addition, the claims arose when the coverage was in effect as the premiums had already been paid. The Club cannot deny coverage when the claims arose when the coverage was in effect.

38. Owners had paid premiums at increased rates as penalty for the collisions till the date of termination. Thus, the Club should be estopped to deny the claims of Quest having made them to alter their position by way of paying penalty in the first place. Owners were in court

with Ore Ofe over the collision in 2015, before the Club prevailed on Owners to withdraw the matter from court because it would resolve the claim. Relying on the Club's express and implied undertakings, Quest withdrew the case. It is therefore unjust that almost 3 years afterwards the claims were not settled and the Club would abandon the claim as though nothing happened.

39. Similarly, in the case of Rover, Quest had in accordance with section 17 of Rule 2 incurred legal expenses and cost of Bank guarantee for the purpose of minimizing any liabilities, costs or expenses. The Club took over the matter from Quest and continued till date of termination. It is unjust to abandon the claims following unreasonable cancellation arising from an unreasonable notice.

40. Quest provided timely notice of the claims when each claim arose.

## FIRST CAUSE OF ACTION- DECLARATORY JUDGMENT

41. Plaintiff repeats and realleges each and every allegation contained in each preceding paragraph as if fully set forth at length herein.

42. The foregoing demonstrates that the loss and liabilities sustained by the Danny Rose and Alexander J were covered by the Club's Policies.

43. Plaintiff seeks a declaration that Defendants are obligated, pursuant to the terms of the Policies, and under the laws of State of New York to provide insurance benefits for Plaintiff's losses and liabilities as a result of the collisions of Danny Rose and Alexander.

## SECOND CAUSE OF ACTION- BREACH OF CONTRACT

44. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth at length herein.

45. Defendants have failed and refused to provide insurance benefits in response to Plaintiff's

demand for the same under the policy.

46. Plaintiff was covered by the Insurance Policy, thereby obligating Defendants to pay the insurance benefits owed to them as a result of the damages incurred from the collisions involving the Danny Rose and Alexander J.

47. The reasons given by Defendants for denying in part coverage under the Insurance Policy are contrived and baseless.

48. The failure and refusal of Defendants to honor its obligations under the Insurance Policy is without a reasonable basis in law or fact.

49. The Insurance Policy contains an implied covenant that imposes on Defendants' obligation to act in good faith and deal fairly with Plaintiff in all matters material to Defendants' insurance agreement.

50. As a result of the wrongful conduct described above, Defendants have breached its contractual covenant and duty of good faith and fair dealing.

51. As a result of the foregoing, Defendants have breached the Insurance Policy and Plaintiff has been damaged.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(1) On the First cause of action, declaring that Defendants, pursuant to the terms of the Insurance Policy, is obligated to provide insurance benefits;

(2) On the second cause of action, monetary damages in an amount exceeding $5,000,000.00 and to be determined at trial, plus interest;

(3) To resume responsibility for the retention of Bloomfield Law Practice and to continue to defend the pending admiralty action in Suit No. FHC/WR/CS/7/2016 at

    the Federal High Court Warri, Nigeria until the suit is determined or settled as provided by the rule.

(4)    Granting such other and further relief, including interest, reasonable attorneys' fees, costs and disbursements, as the Court deems just and proper.

Dated: New York, New York
       November 12, 2018                   Yours etc.,

                                           STEWART LEE KARLIN
                                           LAW GROUP, P.C.

                                           s/Stewart Lee Karlin
                                           STEWART LEE KARLIN, ESQ.
                                           Attorneys for Plaintiff
                                           111 John Street, 22nd Floor
                                           New York, NY 10038
                                           (212) 792-9670
                                           slk@stewartkarlin.com